FILED'08 OCT 10 15:33USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARILYN D. LANXON,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.

07
06-CV-1465-BR

OPINION AND ORDER

FLOYD H. SHEBLEY
Floyd H. Shebley, P.C.
419 5th Street
P.O. Box 1717
Oregon City, OR 97045
(503) 655-5500

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158

1  -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**DAVID J. BURDETT**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

        Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Marilyn Lanxon seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Plaintiff's protective

application for Disability Insurance Benefits (DIB).  This Court

has jurisdiction to review the Commissioner's decision pursuant

to 42 U.S.C. § 405(g).

    Following a thorough review of the record, the Court **AFFIRMS**

the Commissioner's final decision.


### ADMINISTRATIVE HISTORY

    Plaintiff filed her initial application for DIB on

September 21, 2001, with an onset date of August 24, 1999.  The

application was denied initially and on reconsideration.  An

Administrative Law Judge (ALJ) held a hearing on May 7, 2003.  On

October 9, 2003, the ALJ found Plaintiff was not disabled, and,

therefore, not entitled to benefits.

    Plaintiff appealed, and the Appeals Council remanded the

2   -   OPINION AND ORDER

matter for further proceedings.  On June 16, 2005, a second ALJ held a hearing.  On August 15, 2005, the second ALJ found Plaintiff was not disabled, and therefore, not entitled to benefits.  Plaintiff appealed, and the Appeals Council again remanded the matter for further proceedings.  The same ALJ held another hearing on September 14, 2006.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.

The ALJ issued an opinion on March 12, 2007, in which she found Plaintiff is not disabled, and, therefore, is not entitled to benefits.

The ALJ's decision became the final decision of the Commissioner on September 11, 2007, when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

### I.   Plaintiff's Testimony

Plaintiff was 49 years old at the time of the hearing. Tr. 674.  She has a high-school education and some job-related training.  Tr. 247, 674.  She worked for most of her career as a quality-control inspector for Western Precision Products. Tr. 678.

At the hearing, Plaintiff testified rheumatoid arthritis (RA) keeps her from walking, standing, or sitting for more than

30 minutes. Tr. 683-85. She also stated her hands were in a lot of pain all of the time. Tr. 683-84. Plaintiff testified she is troubled by constant fatigue and at times is in so much pain and is so tired that she can hardly get out of bed. Tr. 683-84. Plaintiff stated sometimes she cannot make a fist or grip with her hands. Tr. 685, 689.

Plaintiff testified she receives Remicade treatments every five weeks. Each treatment takes about 3½ hours. Tr. 693. Plaintiff testified the treatments alleviate her pain somewhat, but she does not feel well enough to work even immediately after receiving the treatments. Tr. 694. In addition, the effects do not last until the next scheduled treatment. Tr. 693.

Plaintiff testified she could stand for 30 minutes but would then need to lie down for up to 90 minutes. Tr. 704. She also testified it can be painful to sit for longer periods of time. Tr. 703. Plaintiff stated she could lift no more than about nine pounds. Tr. 688. To relieve her pain, Plaintiff lies down twice a day and takes hot baths. Tr. 701-02. Plaintiff shares household tasks with her roommate. Tr. 685.

## II.  Medical Evidence

From August 5, 1999, to December 7, 2000, Plaintiff was treated by Daniel Twombly, M.D. She first reported ankle and leg pain on August 29, 1999. Tr. 397. Dr. Twombly ordered an MRI, which did not show any abnormalities in the tibial or fibular

shafts.  Tr. 396.  Dr. Twombly offered Plaintiff prednisone for
her pain symptoms, but she declined.  Tr. 375.

Plaintiff attended a hepatitis C class conducted by Robert
Shneidman, M.D., on October 13, 1999.  Tr. 389.  Plaintiff
completed a successful course of Rebetron in June 2000 for
hepatitis C and her liver tests were normal, but she continued to
report low-grade fevers, generalized pain, and fatigue to
Dr. Twombly.  Tr. 369-72.  On November 17, 1999, William Melcher,
M.D., diagnosed Plaintiff with probable fibromyalgia.  Tr. 375,
386.

On October 3, 2001 Plaintiff changed health-care providers.
On November 19, 2001, Plaintiff reported generalized fatigue and
night sweats to Tiffany Gee, M.D.  Dr. Gee noted it was unlikely
that Plaintiff's hepatitis C was causing her symptoms because the
current lab work and her liver function tests were essentially
normal.  Tr. 430.  Dr. Gee referred Plaintiff to John Griffin,
M.D., a rheumatologist.

Dr. Griffin treated Plaintiff from February 2000 until March
2006.  Tr. 465, 566.  During the course of Plaintiff's treatment,
her symptoms alternated between improvement and deterioration.
Tr. 453-61, 491-521, 581-611.  She also reported fatigue and
joint pain at nearly every visit.  Tr. 453-61, 491-521, 581-611.
Dr. Griffin prescribed prednisone for Plaintiff's RA on January
18, 2002, and Plaintiff reported it helped "immensely."  Tr. 461,

464. By February 12, 2002, however, Plaintiff reported to
Dr. Griffin that the prednisone was no longer as effective.
Tr. 461. On February 18, 2002, Dr. Griffin noted Plaintiff had a
low-grade fever. Tr. 459. She discontinued taking prednisone,
and Dr. Griffin prescribed Tylenol with codeine. Tr. 459. On
February 22, 2002, Dr. Griffin noted Plaintiff was "feeling
good." Tr. 457. Plaintiff also reported her joints had not been
hot, red, or swollen, and she had not been running a fever.
Tr. 457.

On May 9, 2002, Plaintiff again reported to Dr. Griffin that
she had pain in her ankles and fingers, and he put her back on
prednisone. Tr. 455. On May 13, 2002, Plaintiff told
Dr. Griffin she was feeling more than 50% better. Tr. 453.

On October 31, 2002, Dr. Griffin prescribed methotrexate
injections. Tr. 494. On December 13, 2002, Plaintiff reported
generalized aching, nausea, fatigue, and headaches began after
she started her methotrexate regimen. Tr. 496. On March 18,
2003, she reported swelling and redness in her ankles to Dr.
Griffin, and he increased her dosage of methotrexate. Tr. 500.
On May 20, 2003, Dr. Griffin increased her dosages of
methotrexate and prednisone again. Tr. 521.

On July 29, 2003, Dr. Griffin prescribed Enbrel to help
Plaintiff's pain symptoms. Tr. 518. On August 18, 2003,
Plaintiff called Dr. Griffin and reported the Enbrel was "working

great."  Tr. 517.

On January 29, 2004, Dr. Griffin noted Enbrel was not working as well as it had been and decided to start Plaintiff on Remicade infusions.  Tr. 514.  After beginning the infusions, Plaintiff reported on March 2, 2004, that her symptoms were better and that she was "feeling good."  Tr. 512.  After she had undergone two infusions, Dr. Griffin noted she had "more energy." Tr. 512.  On April 20, 2004, she again reported she was feeling much better and had more energy since beginning the Remicade infusions.  Tr. 510.  On August 20, 2004, Dr. Griffin noted the Remicade had "really helped" Plaintiff.  Tr. 507.  Dr. Griffin noted on October 14, 2004, however, that the Remicade was wearing off before the next scheduled infusions despite the fact that he had increased the dosage.  Tr. 505.  Nevertheless, Plaintiff stated she would like to continue on the treatment program. Tr. 505.  Dr. Griffin steadily increased the dosage of Remicade. Tr. 576, 579.

On December 16, 2004, Dr. Griffin noted Plaintiff's last Remicade infusion did not have "as much punch" as the prior infusions.  Tr. 584.  Plaintiff, however, reported on April 08, 2005, and August 19, 2005, that she did not want to change anything.  Tr. 590, 599.  On October 21, 2005, Plaintiff reported her last Remicade infusion did not have any effect.  Tr. 601.  On December 13, 2005, however, she again reported she did not want

to change her treatment because things were "going well enough."
Tr. 604.  On January 1, 2006, Dr. Griffin noted Plaintiff was due
for her Remicade treatment in one week but was feeling good.  Tr.
606.  He attributed the results to her newest medication,
Tramadol and stated it "really helped her a lot."  Tr. 606.  By
March 16, 2006, Plaintiff reported Tramadol was no longer working
well and that the Remicade infusion had stopped working about ten
days before her next scheduled infusion.  Tr. 608.  On May 1,
2003, Dr. Griffin concluded Plaintiff "appears to meet" the
criteria for a determination of disability under Listing 14.09.
Tr. 550.  Listing 14.09 includes four subcategories.  Listing
14.09A requires persistent inflammation or deformity in one major
peripheral weight-bearing joint resulting in the inability to
ambulate effectively or one major peripheral joint in each upper
extremity resulting in the inability to perform fine and gross
movements effectively.  Listing 14.09B requires inflammation in
one or more major peripheral joints involving two or more organs
or body systems and at least two of the constitutional symptoms
or signs of severe fatigue, fever, malaise, or involuntary weight
loss.  Listing 14.09C is ankylosing spondylitis or other
spondyloarthropathies, which is an impairment that is not at
issue in this matter.  Listing 14.09D requires "repeated
manifestations of inflammatory arthritis, with at least two of
the constitutional symptoms or signs" and marked limitations in

activities of daily living, maintaining social functioning, or

"completing tasks in a timely manner due to deficiencies in

concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt.

P, app. 1.

On December 7, 2004, James Harris, M.D., performed a

consultative examination of Plaintiff at the request of

Disability Determination Services (DDS).[1] Tr. 537-47.

Dr. Harris concluded Plaintiff's primary problem in terms of

working was hand pain and stiffness, but he did not "expect a

large loss in her hand function at this point" based on her x-

rays, physical exam, and observed function. Tr. 537. Dr. Harris

noted RA was a progressive disease and that Plaintiff's status

could worsen. Tr. 537. Dr. Harris completed a residual

functional capacity evaluation (RFC) for Plaintiff in which he

found she can occasionally lift 20 pounds and frequently lift 10

pounds; stand or walk about six hours in an eight-hour workday

but did not have any limitations on sitting; push or pull only

two hours of an eight-hour workday; frequently balance, kneel,

crouch, and stoop; and occasionally climb or crawl. Tr. 546-45.

Dr. Harris did not give Plaintiff any environmental limitations.

Tr. 545.

---

[1] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R.
§ 416.903.

On December 7, 2004, Plaintiff's x-rays did not show any significant abnormality in her ankles or her hands, feet, and knees.    Tr. 546.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.    *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).    To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).    The Commissioner bears the burden of developing the record.    *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).    *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).    "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."    *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal

10  -  OPINION AND ORDER

quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

### DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 404.1520(a). Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commis-sioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commis-

sioner determines the claimant does not have any "medically severe impairment or combination of impairments." *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's RFC, which is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Soc. Sec. Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20

C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.  *Stout*, 454 F.3d at
1052.  *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
1999).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff did not engage in
substantial gainful activity from her alleged onset date of
August 24, 1999, through her date last insured of March 31, 2005.

At Step Two, the ALJ found Plaintiff had the severe
impairments of RA and fibromyalgia.

At Step Three, the ALJ found Plaintiff did not have an
impairment or combination of impairments that met or medically
equaled one of the listed impairments.  Tr. 22.  The ALJ
concluded Plaintiff's RA was not a severe impairment because her
daily activities showed Plaintiff was able to ambulate and to
perform fine and gross movements effectively on a sustained
basis.  Thus, Plaintiff's impairments did not meet the
requirements of Listing 14.09A.  Tr. 23.  The ALJ also concluded

13  -  OPINION AND ORDER

Plaintiff's RA did not meet the necessary requirements under Listing 14.09B because her RA does not affect two or more organ/body systems.  Tr. 23.  In addition, the ALJ determined Plaintiff's fibromyalgia does not meet or equal a listed impairment because the limitations caused by its symptoms, either alone or in combination with her other impairments, are not so severe as to preclude substantial gainful activity.  Tr. 23.

The ALJ assessed Plaintiff's RFC as follows:  She can lift and carry twenty pounds occasionally and ten pounds frequently; can sit for up to six hours in an eight-hour workday with breaks and stand for six hours in an eight-hour workday if she changes position every 45 minutes; can walk for up to 30 minutes at a time or up to one mile; can use her hands to operate controls for a total of two hours in an eight-hour workday; can frequently finger but only occasionally reach, handle, feel, climb, or crawl; can push or pull with the same limitations as lifting and carrying; and must avoid any exposure to temperature extremes, vibration, humidity, wetness, or hazardous conditions.  Tr. 23.

At Step Four, the ALJ gave Plaintiff "the benefit of the doubt" and found Plaintiff was unable to perform her past relevant work.  Tr. 28.

At Step Five, the ALJ, based on the VE's testimony, concluded Plaintiff could perform jobs that exist in significant numbers in the national economy.  Tr. 28-29.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) rejecting the opinion of treating physician Dr. Griffin, (2) rejecting the testimony of Plaintiff and a lay witness, (3) posing an inadequate hypothetical to the VE, and (4) failing to reopen Plaintiff's prior DIB application.

## I.   Dr. Griffin's Opinion.

Plaintiff contends the ALJ erred by improperly rejecting the opinion of Dr. Griffin, a treating physician and rheumatologist. Plaintiff points out that Dr. Griffin is a specialist in the field of impairments that Plaintiff suffers from.  On May 1, 2003, Dr. Griffin reported in a chart note that, after speaking with Plaintiff's attorney, he believed Plaintiff met the criteria of Listing 14.09.  In addition, in his letter dated April 22, 2004, Dr. Griffin concludes Plaintiff is disabled.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for

rejecting it.  *Id.   See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

Here the ALJ concluded Dr. Griffin's opinion as to Plaintiff's limitations is inconsistent with his case notes and other evidence in the record and is "not well-supported by medically acceptable clinical and/or laboratory diagnostic studies."  Tr. 26.  In addition, the ALJ pointed out that Plaintiff's daily activities are "not consistent with an inability to ambulate or to perform fine and gross movements effectively on a sustained basis," all of which are required to meet the criteria of Listing 14.09A.  Tr. 22.  The ALJ also noted there was not any evidence that Plaintiff's RA involved more than one of her body systems, which is a requirement to meet the

16  -  OPINION AND ORDER

criteria of Listing 14.09B. Tr. 27. In addition, the ALJ found
Plaintiff's symptoms were "well-controlled with only frequent
setbacks" so did not cause her marked limitations, which is a
requirement to meet the criteria of Listing 14.09D. Tr. 27.

With respect to the ALJ's conclusion that Dr. Griffin's
opinions were inconsistent with his case notes, the ALJ pointed
out that Dr. Griffin's notes reflect Plaintiff's symptoms,
although not entirely alleviated by the progressively more
aggressive therapy, were well-controlled with only periodic
setbacks. Tr. 453-65, 491-521, 581-611. Indeed, Plaintiff
reported on several occasions that she was "well enough" and
preferred to continue her treatment because it was working.
Tr. 581, 588, 590, 595. Finally, Dr. Griffin opined Plaintiff
should not experience pain or swelling from her RA with ongoing
aggressive therapy.
Tr. 647.

As noted, Dr. Griffin also concluded in an April 22, 2004,
letter and a May 1, 2003, chart note that Plaintiff is disabled
because she meets the criteria of Listing 14.09. The ALJ
expressly rejected this conclusion of disability on the ground
that "it is not clear that [Dr. Griffin] was familiar with the
definition of 'disability'" within the meaning of the Act.
Moreover, the ALJ found Dr. Griffin appeared to have "stepped out
of his objective role" as treating physician and into the "role

17  -  OPINION AND ORDER

of advocate." Tr. 27.

On December 7, 2004, Dr. Harris, an examining physician, noted Plaintiff's x-rays did not reveal any joint loss, deformity, or bony erosions. Tr. 540. His opinion is consistent with a February 12, 2002, x-ray ordered by Dr. Griffin that did not show any arthritic changes in Plaintiff's hips, hands, or feet. Tr. 474. Dr. Harris also opined Plaintiff should not be experiencing much loss of hand function based on Plaintiff's x-rays, physical exam, and observed function. Tr. 540. Dr. Harris did not note any presence of swelling or warmth in Plaintiff's hands, wrists, or feet, which is consistent with the notes of Dr. Griffin throughout his treatment of Plaintiff. Tr. 539-40, 453-65, 491-521, 576-611.

On this record, the Court concludes the ALJ did not err when she rejected Dr. Griffin's opinion because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for doing so.

**II. Lay Testimony.**

**A. Plaintiff.**

Plaintiff contends the ALJ erred by finding her testimony not entirely credible.

In *Cotton v. Bowen*, the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence

of an impairment or impairments, and she must show the impairment

or combination of impairments could reasonably be expected to

produce some degree of symptom. *Cotton*, 799 F.2d 1403 (9th Cir.

1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.

1991). The claimant, however, need not produce objective medical

evidence of the actual symptoms or their severity. *Smolen*, 80

F.3d at 1284.

If the claimant satisfies the above test and there is not

any affirmative evidence of malingering, the ALJ can reject the

claimant's pain testimony only if she provides clear and

convincing reasons for doing so. *Parra v. Astrue*, 481 F.3d 742,

750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834

(9th Cir. 1995)). General assertions that the claimant's

testimony is not credible are insufficient. *Id.* The ALJ must

identify "what testimony is not credible and what evidence

undermines the claimant's complaints." *Id.* (quoting *Lester*, 81

F.3d at 834).

The ALJ found Plaintiff has severe impairments that could

reasonably be expected to produce some symptoms, but Plaintiff's

allegations as to the intensity, persistence, and limiting

effects of those symptoms are "disproportionate and not well-

supported by objective medical findings or any other

corroborating evidence." Tr. 25. The ALJ noted the record

reflects Plaintiff's treatment has been routine and conservative

in nature as well as successful.  Tr. 25.  The ALJ also pointed
out the numerous office-visit notes that indicated Plaintiff
reported she felt "really good" or "okay" and that her treatment
"really helped."  Tr. 25.  The ALJ observed Plaintiff's worst
symptoms occurred in the five weeks after a trip to the beach in
the winter, which is consistent with her impairments.  Tr. 25.
The ALJ found Plaintiff's "allegedly limited daily activities
cannot be objectively verified," and, even if they could, it
would be "difficult to attribute that degree of limitation to the
claimant's medical condition as opposed to other reasons."
Tr. 26.  Finally, the ALJ found the record reflects that
Plaintiff "engaged in daily activities that are not limited to
the extent one would expect, given the complaints of disabling
symptoms and limitations."  Tr. 26.  The ALJ noted Plaintiff
cares for herself, prepares simple meals, performs household
chores, manages her finances, shops for food every two weeks, and
watches television.  Tr. 26.  The ALJ also noted Plaintiff sewed
as recently as December 2000 and participated in other crafts
weekly.  Tr. 26.

      In addition, the record reflects Plaintiff's medical
treatment has been mostly successful.  Tr. 647.  As noted, she
gave positive reports to Dr. Griffin on numerous occasions.
Tr. 581, 588, 590, 595.  The increase in the severity of
Plaintiff's symptoms after a trip to the beach in November 2003

was reasonable in light of her impairments.  Tr. 604.  Plaintiff reported she is able to care for herself, to prepare simple meals, to perform household chores, to shop for groceries, and to do needlework and other crafts as recently as December 2000.  Tr. 299, 304-05, 307, 315-17, 319, 685-87.

On this record, the Court concludes the ALJ did not err when she found Plaintiff's testimony not entirely credible because she provided clear and convincing reasons supported by substantial evidence in the record for doing so.

### B.    Timothy Lanxon's Testimony.

Plaintiff contends the ALJ erred by not considering the lay testimony of Timothy Lanxon, Plaintiff's ex-husband and current roommate.

The ALJ is required to base her decision on all of the evidence, and that "evidence . . . must be contained in the record, either directly or by appropriate reference."  20 C.F.R. §§ 405.360, 405.370(a).  The record must "include the applications, written statements, certificates, reports, affidavits, medical records, and other documents that were used [by the ALJ] in making the decision under review" and "a verbatim recording of all testimony offered at the hearing" as well as "any prior initial determinations or decisions" on the claim. 20 C.F.R. §§ 405.360.

Although Timothy Lanxon testified at the May 7, 3003,

hearing, he did not testify at the latest hearing conducted by
the ALJ on September 14, 2006, nor is a transcript of his
previous testimony part of the record that was before the ALJ.

On this record, therefore, the Court concludes the ALJ did
not err when she did not consider Timothy Lanxon's testimony from
a prior hearing.

### III. Inadequate Hypothetical.

Plaintiff contends the ALJ erred by posing an inadequate
hypothetical to the VE.

"Hypothetical questions posed to the vocational expert must
set out all the limitations and restrictions of the particular
claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

In her evaluation of Plaintiff's RFC, the ALJ found
Plaintiff had the following limitations:  She can lift and carry
twenty pounds occasionally and ten pounds frequently; can sit for
up to six hours in an eight-hour workday with breaks and stand
for six hours in an eight-hour workday if she changes position
every 45 minutes; can walk for up to 30 minutes at a time or up
to one mile; can use her hands to operate controls for a total of
two hours in an eight-hour workday; can frequently finger but
only occasionally reach, handle, feel, climb, or crawl; can push
or pull with the same limitations as lifting and carrying; and
must avoid any exposure to temperature extremes, vibration,
humidity, wetness, or hazardous conditions.  Tr. 23.

At the hearing, the ALJ asked the VE to consider a
hypothetical claimant who is 49 years old; has a high-school
education; can read, write and subtract; is right-hand dominant,
and has all of the above limitations.  Tr. 707.

The ALJ then asked the VE whether, given those limitations,
there were any jobs in the national economy that Plaintiff could
perform.  Tr. 707.  The VE stated a person with those limitations
and qualifications could work as an office clerk, which is
Plaintiff's past relevant work.[2]  Tr. 707.  The VE added that
such a person could also work as a companion or file clerk.

On this record, the Court concludes the ALJ did not pose an
inadequate hypothetical to the VE because the hypothetical
accurately included Plaintiff's limitations as reflected in the
ALJ's findings and RFC assessment.

**IV.  Prior DIB Application.**

Plaintiff contends the ALJ erred by failing to reopen
Plaintiff's prior DIB application submitted October 24, 2000.

Generally the Court may not review an ALJ's decision to
decline to reopen a prior application for DIB.  See *Panages v.
Bowen*, 871 F.2d 91, 92-93 (9th Cir. 1989).  There is, however, a
narrow exception to that rule:

The court has jurisdiction to review the

---

[2] At Step Four, the ALJ gave Plaintiff the "benefit of the
doubt" and found she was unable to perform her past relevant
work.  Tr. 28.

> Commissioner's decision not to reopen a final
> benefits decision if the claimant "presents a
> colorable constitutional claim of [a] due
> process violation that implicates a due
> process right either to a meaningful
> opportunity to be heard or to seek
> reconsideration of an adverse benefits
> determination."

*Rolen v. Barnhart*, 273 F.3d 1189, 1191 (9th Cir. 2001)(quoting

*Evans v. Chater*, 110 F.3d 1480, 1483)). A claim is colorable "if

it is not wholly insubstantial, immaterial, or frivolous." *Id*.

To raise a "colorable constitutional claim," the claimant must

provide sufficient facts to support a due-process violation.

*Klemm v. Astrue*, No. 06-16981, WL4210589, at *4 (9th Cir.

2008)(citing *Hoye v. Sullivan*, 985 F.2d 990, 992 (9th Cir.1993)).

Merely alleging a due-process violation is not sufficient to

raise a colorable constitutional claim. *Id*.

Here Plaintiff does not allege a due-process violation

occurred. She points out, however, that she was not represented

by an attorney at the time of her prior application for DIB.

Although the Ninth Circuit has held the fact that a claimant was

not represented by an attorney can form the basis for "a

colorable constitutional claim of a due process violation," other

factors must also be present (*e.g.*, a mental impairment) that

prevent the claimant from understanding her administrative

remedies. *See Evans*, 110 F.3d at 1483. Plaintiff has not

established other factors were present.

On this record, therefore, the Court concludes it does not have the authority under these circumstances to review the ALJ's decision not to reopen Plaintiff's prior application for DIB. *See Panages*, 871 F.2d at 92-93.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 8th day of October, 2008.


ANNA J. BROWN
United States District Judge